IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, </br></br>Petitioner, </br></br>v. </br></br>CSX TRANSPORTATION, INC., and BROTHERHOOD OF RAILROAD SIGNALMEN, </br></br>Respondents. | No. 04 C 5292 </br></br>Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Petitioner International Brotherhood of Electrical Workers ("IBEW") filed a petition seeking to set aside the award of Public Law Board No. 6525 ("PLB 6525") in Case No. 71, arguing that PLB 6525's failure to allow IBEW full participation in the proceedings violated the Railway Labor Act ("RLA"), 45 U.S.C. § 151 et seq., and denied IBEW due process. IBEW filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56, and respondents CSX Transportation, Inc. ("CSX") and Brotherhood of Railroad Signalmen ("BRS") filed cross-motions for summary judgment. The parties agree that no genuine issues of material fact exist.

For the reasons discussed below, IBEW's motion for summary judgment is denied, and CSX's and BRS's cross-motions for summary judgment are granted.

## FACTS

The parties agree that the following facts are not in dispute.

Petitioner IBEW is a national labor organization and the duly authorized bargaining representative for employees of CSX in the craft or class of electricians. Respondent CSX is a

common carrier by railroad engaged in interstate commerce and the operation of rail equipment and facilities. Respondent BRS is a national labor organization and the duly authorized bargaining representative for employees of CSX in the craft or class of signalmen. CSX is a party to a collective bargaining agreement ("CBA")with IBEW ("IBEW Agreement") and a separate CBA with BRS ("BRS Agreement").

On August 26, 2002, CSX assigned certain work associated with removing and installing a data radio near Roanoke, Alabama, to an electrician covered by the IBEW Agreement. BRS asserted that this assignment violated the BRS Agreement and filed a claim under the BRS Agreement on behalf of signalman W.E. Dunn to that effect. CSX took the position that it was free to assign the work to either BRS or IBEW members. BRS and CSX were unable to resolve BRS's claim, and agreed to present the dispute to PLB 6525, a special board established by BRS and CSX to resolve disputes arising between them pursuant to Section 3, Second of the RLA. IBEW played no part in the creation of PLB 6525 and did not select voting member of the arbitration panel. PLB 6525 had two partisan members - a CSX officer and a BRS officer - and a neutral member, M. David Vaughn ("Vaughn"), who was selected jointly by the partisan members and acted as chairman of PLB 6525. BRS's claim regarding W.E. Dunn was assigned Case No. 71.

Vaughn notified IBEW by a letter dated March 4, 2004, that BRS's claim had been presented to PLB 6525, that a hearing had been scheduled, and that IBEW could submit its position on the claim and attend the hearing as a third party. On March 20, 2004, IBEW responded with a letter objecting to PLB 6525's proceedings, including denying IBEW the opportunity to: (1) negotiate the establishment of PLB 6525; (2) participate in the framing of the

issues presented to it; or (3) participate in the selection of Vaughn as chairman. Vaughn held an executive session with the partisan members of PLB 6525 regarding IBEW's procedural objections. Vaughn subsequently notified IBEW that PLB 6525 had rejected IBEW's objections, he intended to proceed with the consideration of Case No. 71, and IBEW's role in those proceedings would be limited to that of a third party.

IBEW submitted a position paper to PLB 6525, maintained its objection to PLB 6525's refusal to grant IBEW full participation in the proceedings, and incorporated its March 20, 2004, letter into its submission. IBEW presented oral argument to PLB 6525 at a hearing on April 12, 2004. Three weeks after the hearing, Vaughn sent a draft award to the members of PLB 6525, with a cover letter instructing the two partisan members to "review the language and consult with each other as necessary." The final award in Case No. 71 ("Award"), which interpreted the BRS Agreement, accepted BRS's position that CSX violated the BRS Agreement when it assigned the data radio work to an IBEW member, and rejected CSX's position that it could assign the work to either BRS or IBEW.

## DISCUSSION

IBEW argues that the Award must be set aside because the proceeding of PLB 6525: (1) failed to comply with the requirements of the RLA; (2) was not confined to matters within the PLB 6525's jurisdiction; and (3) denied IBEW due process of law.

The RLA establishes a system of compulsory arbitration of grievances ("minor disputes")[1], but gives parties a choice of arbitral methods. United Transportation Union v. Gateway Western Ry. Co., 284 F.3d 710, 711 (7th Cir. 2002). One option is arbitration by a

---

[1] IBEW does not challenge the characterization of the dispute between CSX and BRS as "minor."

3

three-member panel called a public law board ("PLB"). Id. One member of the PLB is appointed by the union, one by the employer, and a neutral member may be appointed. 45 U.S.C. § 153, Second; Id. A neutral is appointed if the two party-designated arbitrators cannot agree on the resolution of the grievance, and is appointed by the National Mediation Board ("NMB") if the party-arbitrators cannot agree on a neutral. Id.

Section 3, Second of the RLA does not expressly provide for judicial review of PLB awards, but Section 3, First (q), which allows limited judicial review of National Railroad Adjustment Board ("NRAB") awards, has been extended to PLBs. See, e.g., Lyons v. Norfolk & Western Ry. Co., 163 F.3d 466, 469 (7th Cir. 1999). It is well established that the scope of judicial review of a PLB decision is "highly deferential" and "among the narrowest known to the law." Id.; Morin v. Consolidated Rail Corp., 810 F.2d 720, 722 (7th Cir. 1987). Pursuant to the RLA, judicial review of arbitration awards is limited to three specific grounds: (1) failure of the board to comply with the requirements of the RLA; (2) failure of the board to confine itself to matters within the scope of its jurisdiction; and (3) fraud or corruption. 45 U.S.C. § 153, First (q); see also Lyons, 163 F.3d at 469. Several circuits, including the Seventh Circuit, have also recognized due process as a fourth ground for judicial review. See, e.g., Pokuta v. Trans World Airlines, Inc., 191 F.3d 834, 839 (7th Cir. 1999).

## I. Requirements of the RLA

IBEW asserts that PLB 6525 failed to comply with the requirements of the RLA by refusing IBEW's request to select a voting member of PLB 6525. CSX responds that the proceeding was in full compliance with the clear statutory language of the RLA, which provides that a PLB "shall consist of one person designated by the carrier and one person designated by

4

the representative of the employees," and a neutral member either selected by the parties or the NMB. 45 U.S.C. § 153, Second. IBEW does not point to any specific provision of the RLA allegedly violated by PLB 6525. Instead, IBEW asserts that the RLA procedure is not adequate in a "trilateral" dispute such as the instant case, and that case law requires that the statutory procedure be modified.

The Supreme Court held in Transportation-Communication Emp. Union v. Union Pac. R. Co. ("TCU"), 385 U.S. 157, 165-66 (1966), that all interested parties must be notified of an arbitration and afforded a right to "a chance to be heard." The question in the instant case is whether a "chance to be heard" includes the right of a second union to designate a voting member of the PLB, as IBEW asserts, even though the RLA provides for three-member panels.

At first blush, IBEW's argument that it is entitled to a vote on PLB 6525 is not without some intuitive appeal. Although only the BRS Agreement was under consideration, the Award that certain work must be performed by a BRS member is binding on CSX, necessarily dictates that such work may not be assigned to a IBEW member, and therefore affects IBEW. Upon closer examination, however, IBEW's argument is unconvincing. Although IBEW emphasizes in its opposition to CSX's motion for summary judgment that "this case presents a question of compliance with statutory, not contractual, requirements," IBEW does not argue that PLB 6525 violated the statutory language of the RLA. (emphasis in original). Instead, IBEW relies on a line of cases from the Eighth Circuit, which IBEW asserts hold that the RLA "requires that each interested union be given an equal opportunity for full participation in the proceedings." For the reasons discussed below, the Eighth Circuit cases are factually distinguishable from the instant

5

case, based on precedent unique to the Eighth Circuit, and not binding on the court. Accordingly, the court declines to apply their holdings to the instant case.

In Brotherhood of Locomotive Engineers International Union v. Union Pac. R. Co., 134 F.3d 1325 (8th Cir. 1998)("BLE v. UP"), upon which IBEW rests the bulk of its arguments, the Eighth Circuit upheld the district court's decision to vacate a PLB award. BLE v. UP, however, provides no support for IBEW's argument that PLB 6525 violated the statutory requirements of the RLA. The petitioner in BLE v. UP sought an order vacating a PLB decision prohibiting the railway from negotiating with either the petitioner or another union. Id. The petitioner was provided notice and an opportunity to present argument as an interested party, but was not a member of the PLB. Id. Although the Eighth Circuit vacated the arbitration award, the court agreed that the award conformed to the requirements of Section 3, Second of the RLA. Id. at 1332 ("[O]n its face, the statute anticipates a three-member board which would be upset if a second union with an interest in the dispute were allowed to designate a board member as well."). Moreover, BLE v. UP emphasizes that its ultimate conclusion is required not by the RLA, but by Eighth Circuit precedent, which is not binding on this court. BLE v. UP, 134 F.3d at 1333 ("Our own reading of the statute leaves us somewhat discomforted by this resolution, because the plain language of the second paragraph of 45 U.S.C. § 153 Second seems to envision only a three-person PLB.").

Even if BLE v. UP supported IBEW's statutory argument, it is factually distinguishable because the PLB in that case interpreted identical provisions of each union's CBA with the common employer. The court found that "both unions have a right to representation on the board where the dispute involves a contract provision common to both unions' CBAs with the same

carrier, even if the contract dispute initially arose between the rail carrier and but one of the unions over the contract provision." Id. Here, in contrast, IBEW does not argue that the IBEW Agreement contained identical provisions, and the portions of the CBAs cited in the Award are not identical.

Lastly, CSX suggests that the court in BLE v. UP misread Eighth Circuit precedent, which lead to its erroneous conclusion that both unions were entitled to voting membership on the PLB, a holding that has not been followed by any other court. The Eighth Circuit itself expressed reservations about its conclusion, which it emphasized it believed was compelled by circuit precedent despite its shortcomings. The holding of BLE v. UP was based in large part on two earlier Eighth Circuit cases, United Transportation Union E v. Burlington Northern, Inc., 470 F.2d 813 (8th Cir. 1972)("BN1") and General Comm. of Adjustment v. Burlington Northern, Inc., 563 F.2d 1279, 1284 (8th Cir. 1977)("BN2"). IBEW cites these cases as well, but they are of little weight here for similar reasons as those regarding BLE v. UP. In BN1, the Eighth Circuit noted "that both unions were entitled to participate in any proceedings to determine the meaning of a paragraph common to both collective bargaining agreements." Again, there are no common CBA provisions in the instant case and nothing in BN1 suggests that the right to participate includes the right to have a representative on the arbitration panel. BN2 held that railroad employees could not be compelled to present their grievances to a union-employer arbitration panel on which their own union does not sit. Id. BN2, however, did not involve the interpretation of two separate union contracts. Instead, the issue was essentially whether employees who were members of two unions, due to agreements specific to certain operating crafts, could have the union of their choice represent them on an arbitration panel. The instant

case is factually distinguishable, as it does not involve dual-union membership or operating crafts. In addition, nowhere does BN2 suggest that two unions should be allowed to have representatives on an arbitration panel.

The court, however, need not decide whether BLE v. UP, BN1, and BN2 were rightly decided, because it is not obliged to follow Eighth Circuit case law, even if it were to lead to the conclusion that IBEW urges. IBEW does not point to, and the court is unable to identify, any court citing BLE v. UP, BN1, or BN2 in support of a finding that in a trilateral dispute both unions must be permitted to be a member of the PLB.[2] The court is unpersuaded that the reasoning of BLE v. UP should be extended to override the clear statutory language of the RLA that PLBs be comprised of only three voting members.

The RLA explicitly addresses situations where parties in addition to those represented on the PLB have a stake in the dispute. Section 3, First(j) of the RLA provides that such parties are entitled to notice and an opportunity to participate as an interested party. 45 U.S.C. § 153, First (j).[3] If the drafters of the statute had wanted to provide a procedure for establishing expanded

---

[2] IBEW filed a documented titled "Motion for Leave to File Supplemental Authority" on March 21, 2005. IBEW attached to the motion a copy of a recent PLB award that cites BLE v. UP favorably. Both CRX and BRS responded to the motion. IBEW, however, failed to notice the motion for presentment to the court, as required by Local Rule 5.3(a) ("Except in the case of an emergency or unless otherwise ordered, written notice of the intent to present a motion specifying the date on which the motion is to be presented, a copy of the motion, and any accompanying documents must be served... ."). Accordingly, IBEW's motion to file supplemental authority is stricken and the court does not consider the attached authority. The court also notes that arbitration awards are of no precedential value in a district court.

[3] 45 U.S.C. § 153, First (j) states, "Parties may be heard either in person, by counsel, or by other representatives, as they may respectively elect, and the several divisions of the Adjustment Board shall give due notice of all hearings to the employee or employees and the carrier or carriers involved in any disputes submitted to them."

8

PLBs in multi-party disputes, of which they were evidently cognizant, it seems likely that they would have done so. Further, four-member boards are likely to deadlock and thereby stymie a fundamental purpose of the RLA, "to provide for the prompt and orderly settlement of all disputes." 45 U.S.C. §151a(5). The court declines to ignore the clear statutory language and congressional intent of the RLA based on a thin line of cases from a foreign circuit. Accordingly, IBEW's motion for summary judgment is denied as to the argument that PLB 6525 failed to comply with the requirements of the RLA.

## II. Jurisdiction of PLB 6525

IBEW also argues that PLB 6525 exceeded its jurisdiction, but conflates this argument with its unsuccessful alternative argument discussed above that PLB 6525 did not comply with the RLA. IBEW fails to establish that it is entitled to judicial review on this ground.

Courts consider an award to have failed to conform or confine itself to matters within the arbitrator's jurisdiction only if the award has no rational basis, reflected the arbitrator's own sense of industrial justice, or was contrary to the express terms of the CBA. See Lyons, 163 F.3d at 469. The Seventh Circuit has held that, "To remain within the scope of its jurisdiction, the essence of the PLB's decision must be contained in the terms of the agreement between the union and the employer...In other words, the PLB's decision must be based on the provisions of the CBA." Id. (citing United Transportation Union v. Soo Line R. Co., 457 F.2d 285, 288 (7th Cir. 1971). The Lyons court noted that the focus of a reviewing court is not whether a PLB's decision varied with federal standards, but rather whether it ignored "clear and unambiguous" contract provisions. Id. at 470.

In the instant case, IBEW does not challenge CSX's and BRS's contention that PLB 6525 interpreted the BRS Agreement and fails to point to a single provision of the BRS Agreement that PLB 6525 failed to interpret. PLB 6525's charge was to determine whether the assignment of work to a non-BRS member violated the BRS Agreement. Because PLB 6525 interpreted the BRS Agreement, its interpretation is conclusive and binding on CSX's assignment of data radio replacement work near Roanoke, Alabama.[4] Id. Accordingly, IBEW's motion for summary judgment is denied as to its argument that PLB 6525 exceeded its jurisdiction.

## III. Due process

IBEW's final argument is that the proceedings of PLB 6525 did not satisfy fundamental due process requirements. The Supreme Court has held that, "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976)(internal citations and quotation marks omitted). The Seventh Circuit addressed due process in the arbitration context in Generica Ltd v. Pharmaceutical Basics, Inc., 125 F.3d 1123, 1130 (7th Cir. 1997), holding that, "It is clear that an arbitrator must provide a fundamentally fair hearing...A fundamentally fair hearing is one that 'meets the minimal requirements of fairness – adequate notice, a hearing on the evidence, and impartial decision by the arbitrator.'"(internal citations and quotation marks omitted).

It is well-established, and respondents do not dispute, that IBEW had a right to be heard in order to represent its interests. As the Supreme Court held in TCU, the right to disputed work is to be decided by a board that "must bring before it all Unions claiming the same jobs for their

---

[4]The court notes that if CSX assigns data radio repair work at a different location to a BRS member, IBEW may grieve that assignment as a violation of the IBEW Agreement, and BRS will likely be designated an interested third party pursuant to 45 U.S.C. § 153, First(j).

10

members." TCU, 385 U.S. at 163. The Seventh Circuit has repeatedly affirmed that an opportunity to be heard is a required to satisfy due process requirements. See, e.g., Generica, 125 F.3d at 1130. IBEW argues that its due process rights were violated because "there was nobody on the PLB who represented their interests." IBEW's argument characterizes the right to vote as included in the opportunity to be heard, but fails to point to any Seventh Circuit precedent in support of this expansion of due process rights. Indeed, IBEW was granted full due process rights. IBEW's objection to the constitution of PLB 6525 was received and carefully considered by the panel, it was permitted to submit a position paper with supporting documents, and it presented oral argument at the hearing. The Award, authored by the neutral arbitrator, includes a full discussion of IBEW's objections to its third-party status, and its position that the work should be assigned exclusively to IBEW members. Finally, the court notes that CSX also represented IBEW's argument, at least in part, because CSX argued that the work could be assigned to IBEW as well as BRS.

In support of its argument that it was denied due process, IBEW cites to only one case, from the Second Circuit. International Ass'n of Machinists and Aerospace Workers v. Metro-North Commuter Railroad, 24 F.3d 369 (2nd Cir. 1994)("IAM v. Metro-North"), considered a work-assignment dispute involving two unions. IAM v. Metro-North set aside an NRAB award, based in part on its finding that the due process rights of one union were violated because it did not have a representative on that arbitration panel. Id. at 372. The Second Circuit vacated the award even though the plaintiff-union had received notice and an opportunity to present its views. Id. The decision, however, lends little if any support to IBEW's arguments for at least three reasons.

11

First, IAM v. Metro-North is distinguishable because it involved an arbitration award by an NRAB sub-panel on which one of the two unions could never have a representative because it was not a national labor organization. Id. at 371. Although PLBs can serve as substitutes for proceedings otherwise referable to the NRAB, the RLA sets forth different procedures for each. For example, the NRAB is a permanent board consisting of thirty-four members selected by carriers and national labor organizations, while PLBs are temporary panels consisting of two or three members selected by parties to a particular dispute. 45 U.S.C. § 153, First and Second. Assuming arguendo that IAM v. Metro-North implicitly held that NRAB panels are unconstitutional, this holding is therefore inapposite to PLBs. Second, even if IAM v. Metro-North were applicable, the court agrees with BRS that it is a largely anomalous decision that has not been cited for the holding at issue here by any other court in the more than ten years since it was published, and that its reasoning is unpersuasive. Third, like the Eighth Circuit cases, IAM v. Metro-North is not binding precedent in this court.

For these reasons, IBEW's motion for summary judgment is denied as to the argument that PLB 6525 violated due process.

## CONCLUSION

For the reasons stated herein, the court denies IBEW's motion for summary judgment to set aside the arbitration award, and grants BRS's and CSX's cross-motions for summary judgment to confirm that award.

**ENTER:** May 13, 2005

Robert W. Gettleman
United States District Judge

12